UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

RONALD HILTS                                    CIVIL ACTION NO. 6:18-cv-00138

VERSUS                                          JUDGE JAMES

COMMISSIONER OF                                 MAGISTRATE JUDGE HANNA
SOCIAL SECURITY

## REPORT AND RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be reversed and remanded for further administrative action.

## Administrative Proceedings

The claimant, Ronald Hilts, fully exhausted his administrative remedies before filing this action in federal court.  He filed applications for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"), alleging disability beginning on March 20, 2015 due to Graves' Disease and hyperthyroidism.[1]  His applications were denied.[2]  He requested a hearing, which

---

[1]      Rec. Doc. 8-1 at 47, 133, 135, 157.

[2]      Rec. Doc. 8-1 at 56, 66.

was held on January 25, 2017 before Administrative Law Judge Robert Grant.[3]  The ALJ issued a decision on March 2, 2017, concluding that the claimant was not disabled within the meaning of the Social Security Act from March 20, 2015 through the date of the decision.[4]  The claimant requested review of the ALJ's decision, but the Appeals Council found no basis for review.[5]  Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. § 405(g).  The claimant then filed this action seeking review of the Commissioner's decision.

## Summary of Pertinent Facts

The claimant was born on May 4, 1982.[6]  At the time of the ALJ's decision, he was thirty-four years old.  He graduated from high school and attended college without obtaining a degree.[7]  He has relevant work experience as a fast food shift manager, an immigration transport officer, and a team leader in a home for mentally disabled men.[8]  He alleged that he has been disabled since March 20, 2015.[9]  In his

---

[3]    Rec. Doc. 8-1 at 32-46 (hearing transcript).

[4]    Rec. Doc. 8-1 at 20-26 (the ALJ's ruling).

[5]    Rec. Doc. 8-1 at 5.

[6]    Rec. Doc. 8-1 at 47, 133, 135.

[7]    Rec. Doc. 8-1 at 38, 158.

[8]    Rec. Doc. 8-1 at 39, 158, 166.

[9]    Rec. Doc. 8-1 at 133, 135.

applications for benefits, he attributed his alleged disability to Graves' Disease and hyperthyroidism.[10]  In a function report dated June 8, 2015, he stated that any amount of heat, stress, or even a short walk caused his heart rate to increase to over 150 beats per minute and cause shortness of breath and dizziness.[11]  At the hearing, he also testified that he had experienced chronic back pain since two low back surgeries in approximately 2003 or 2004, headaches, and fatigue.  In his briefing, he argued that he also has severe congestive heart failure.

On March 12, 2014, the claimant was examined by Dr. Jade N. Heinen for commercial driver fitness.[12]  It was noted that he experienced back pain and had undergone spinal fusion surgery in 2003.  Dr. Heinen noted that the claimant took Tylenol for his back pain and that this medication would not affect his driving. Inconsistently, however, Dr. Heinen indicated that the claimant had not undergone previous spine surgery, and had no limitation of motion or tenderness in his spine. Dr. Heinen also indicated that the claimant had no heart murmurs, no extra sounds in his heart, no enlarged heart, no pacemaker, and no implanted defibrillator.

---

[10]     Rec. Doc. 8-1 at 47, 157.

[11]     Rec. Doc. 8-1 at 174.

[12]     Rec. Doc. 8-1 at 357-365.

On July 10, 2014[13] and July 14, 2014,[14] the claimant saw Dr. Jevin Bordelon and Dr. Michael Owens, respectively, in the emergency department of Acadian Medical Center in Eunice, Louisiana, in connection with injuries sustained in a motor vehicle accident. He complained of pain in his back, left lateral anterior chest, left lateral posterior chest and neck. He was diagnosed with myofascial lumbar strain, myofascial cervical strain, and rib contusion. On both occasions, he was given pain medications and released.

The claimant again saw Dr. Owens in the emergency department of Acadian Medical Center on September 9, 2014 for a rash.[15] It was noted that he was tachycardic, which means that his pulse rate was elevated.

On March 24, 2015, lateral chest x-rays ordered by Dr. Heinen were normal.[16]

On April 28, 2015, the claimant saw an endocrinologist, Dr. Daniel G. Stout, on referral from Dr. Heinen for hyperthyroidism.[17] The claimant reported that he had experienced an elevated heart rate since 2012 and was taking propranolol for high blood pressure. According to Dr. Stout, testing had revealed hyperthyroidism

---

[13]     Rec. Doc. 8-1 at 323-329.

[14]     Rec. Doc. 8-1 at 318-322.

[15]     Rec. Doc. 8-1 at 314-317.

[16]     Rec. Doc. 8-1 at 340.

[17]     Rec. Doc. 8-1 at 368-370.

4

as the cause of the claimant's elevated heart rate.  Dr. Stout's assessments were abnormal thyroid function study, tachycardia, abnormal liver function study, anemia, fatigue, nausea with vomiting, and tobacco use disorder.  He suspected that the claimant had Graves' Disease and planned further evaluation.  He suspected that the abnormal liver study and fatigue were related to the hyperthyroidism.  He did not know the cause of the anemia, and he recommended that the claimant stop smoking.

On May 1, 2015,[18] the claimant was seen by Dr. Randy Miller in the emergency room at Acadian Medical Center.  Upon arrival at the hospital, the claimant had chest pain, heart palpitations, and a headache.  A CT scan of his head and brain was normal.  A chest x-ray showed cardiomegaly, an abnormal enlargement of the heart.  He was diagnosed with a thyroid storm, which is a life-threatening health condition associated with untreated or undertreated hyperthyroidism characterized by the individual's heart rate, blood pressure, and body temperature soaring to dangerously high levels.[19]  He was placed on Coreg instead of propranolol and started on Lopressor and propylthiouracil.

---

[18]     Rec. Doc. 8-1 at 293-311.

[19]     Thyroid Storm:  Causes, Symptoms, and Diagnosis, https://www.healthline.com/health/thyroid-storm (last visited Jan. 16, 2019).

On May 13, 2015,[20] the claimant again presented at the emergency department of Acadian Medical Center with complaints of chest pain.  An EKG was abnormal, revealing an atrial flutter.  A chest x-ray showed mild cardiomegaly with no acute pulmonary process or significant change from the prior examination.  Dr. Miller and Dr. Stout were consulted, and the claimant was transferred to University Hospital and Clinics ("UHC") in Lafayette, Louisiana, where he could be seen by Dr. Stout. However, the record contains no indication that the claimant was seen at UHC on that date.

On June 2, 2015,[21] the claimant saw Dr. Heinen again.  His chief complaints were headaches and weight loss, which Dr. Heinen noted were likely the result of his hyperthyroidism.  Dr. Heinen noted that she had referred the claimant to an endocrinologist but the claimant had no insurance and could not afford to see the specialist.  Dr. Heinen's assessments were hyperthyroidism, dysuria, microcytic anemia, headache, and chlamydial infection.

On November 10, 2015, the claimant was seen at UHC with diagnoses of altered mental state, deep venous thrombosis, hepatic injury, lactic acidosis, metabolic acidosis, swelling of left upper extremity, and thyroid storm.[22]  Future

---

[20]    Rec. Doc. 8-1 at 278-292.

[21]    Rec. Doc. 8-1 at 334-338.

[22]    Rec. Doc. 8-1 at 371-374.

appointments were scheduled with the medicine clinic, the endocrine clinic, the ENT clinic, and the cardiology clinic.

A transthoracic echocardiography report from a study conducted on February 19, 2016 at UHC showed congestive heart failure. The left ventricular ejection fraction was 37%, the left ventricular size was moderately increased, the right ventricle cavity was mildly enlarged, there was trace aortic regurgitation present, and trace to mild mitral regurgitation.

On March 4, 2016, the claimant was seen in the internal medicine clinic at UHC.[23]    He was diagnosed with hyperthyroidism, atrial flutter, valvular regurgitation, and chronic congestive heart failure. His medications were acetaminophen, carvedilol, lisinopril, methimazole, Topamax, Coumadin, and warfarin.

The claimant followed up at UHC's internal medicine clinic on June 13, 2016.[24] He also complained of swelling on both sides of his neck, causing some swallowing problems. It was noted that he had improved since the last visit, his medications were adjusted, and he was to be referred for surgery as soon as his thyroid lab work normalized.

---

[23]    Rec. Doc. 8-1 at 375-381.

[24]    Rec. Doc. 8-1 at 415-420.

On August 26, 2016, the claimant again followed up at the internal medicine clinic at UHC.  He had been taken off thyroid medication about one and a half months previously and was having more headaches as well as a decreased appetite.

On September 12, 2016, the claimant again followed up at UHC's internal medicine clinic.[25]  His problems were hyperthyroidism and systolic heart failure. His medications were Coreg, Lisinopril, and Methimazole.  Further testing was scheduled.

Although the record does not contain an operative report, there is evidence that the claimant underwent thyroidectomy surgery on November 18, 2016 and was discharged from UHC on November 20, 2016.[26]  On November 23, 2016,[27] he saw Dr. Bradley J. Chastant in the UHC East Clinic for a post-operative visit.  It was noted that he underwent the thyroidectomy on November 18, 2016, was doing well, and had a good voice.  He was to return in two weeks for a wound check, continue taking Synthroid, and follow up with regard to his Coumadin prescription.  His medications were acetaminophen, calcium carbonate, Coreg, Keflex, Lovenox, Nexium, Synthroid, Lisinopril, and Warfarin.

---

[25]    Rec. Doc. 8-1 at 385-388.

[26]    Rec. Doc. 8-1 at 232-248.

[27]    Rec. Doc. 8-1 at 421-427.

The claimant saw Dr. Chastant again on December 7, 2016.[28]  He was to keep his Coumadin clinic appointment, decrease the Synthroid dosage if feeling anxious or getting little sleep, see his primary care physician for his rash, and return in four weeks after testing of his thyroid hormone levels.

On January 25, 2017, the claimant testified at a hearing regarding his symptoms, impairments, and medical treatment.  He stated that his thyroid condition causes headaches, fluctuations in appetite, fatigue, and a racing heart.  He testified that his heart starts racing when he gets overheated, walks fast, or bends down and comes back up quickly.  He stated that he had two back surgeries in approximately 2003 or 2004 – a discectomy and a fusion – and continues to have low back pain without radiation.  He stated that the medication he takes causes drowsiness.  While he admitted that his fatigue fluctuates somewhat, he estimated that he has three to four bad days per week.  He attributes the fatigue to his thyroid condition and his medication.  He said:  "if I don't take my medicine it can harm me and if I do take my medicine I'll just sleep my day away."[29]

The claimant now seeks reversal of the Commissioner's adverse ruling.

---

[28]     Rec. Doc. 8-1 at 256-261.

[29]     Rec. Doc. 8-1 at 40.

## Analysis

### A.    Standard of Review

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence.[30] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[31] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[32]

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.[33] In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner.[34] Conflicts in

---

[30]    *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[31]    *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

[32]    *Hames v. Heckler*, 707 F.2d at 164 (citations omitted).

[33]    42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173.

[34]    *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1022.

the evidence[35] and credibility assessments[36] are for the Commissioner to resolve, not the courts.  Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination:  (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education, and work experience.[37]

## B.    Entitlement to Benefits

The Disability Insurance Benefit ("DIB") program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[38]  Every individual who meets certain income and resource requirements, has filed an application for benefits, and is determined to be disabled is eligible to receive Supplemental Security Income ("SSI") benefits.[39]

A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

---

[35]    *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).

[36]    *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

[37]    *Wren v. Sullivan*, 925 F.2d at 126.

[38]    See 42 U.S.C. § 423(a).

[39]    42 U.S.C. § 1382(a)(1) & (2).

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[40]  A claimant is disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[41]

## C.   Evaluation Process and Burden of Proof

A sequential five-step inquiry is used to determine whether a claimant is disabled.  This process requires the ALJ to determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work.[42]

Before going from step three to step four, the Commissioner evaluates the claimant's residual functional capacity[43] by determining the most the claimant can

---

[40]    42 U.S.C. § 1382c(a)(3)(A).

[41]    42 U.S.C. § 1382c(a)(3)(B).

[42]    20 C.F.R. § 404.1520.

[43]    20 C.F.R. § 404.1520(a)(4).

12

still do despite his physical and mental limitations based on all relevant evidence in the record.[44]  The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work.[45]

The claimant bears the burden of proof on the first four steps.  At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[46]  This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[47]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[48]  "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis."[49]

---

[44]     20 C.F.R. § 404.1545(a)(1).

[45]     20 C.F.R. § 404.1520(e).

[46]     *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

[47]     *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

[48]     *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Fraga v. Bowen*, 810 F.2d at 1302.

[49]     *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

**D.**  **The ALJ's Findings and Conclusions**

In this case, the ALJ determined, at step one, that the claimant has not engaged in substantial gainful activity since March 20, 2015. This finding is supported by substantial evidence in the record.

At step two, the ALJ found that the claimant has the following severe impairments: thyroid disease, cardiac arrhythmia, and lumbar degenerative disc disease. status/post lumbar fusion. This finding is supported by substantial evidence in the record. However, the claimant contends that his congestive heart failure should also have been determined to be a severe impairment.

At step three, the ALJ found that the claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment. The claimant does not challenge this finding.

The ALJ found that the claimant has the residual functional capacity to perform the full range of sedentary work. The claimant challenges this finding.

At step four, the ALJ found that the claimant is not capable of performing his past relevant work. The claimant does not challenge this finding.

At step five, the ALJ found that the claimant was not disabled from March 20, 2015 through March 2, 2017 (the date of the decision) because there are jobs in the national economy that he can perform. The claimant challenges this finding.

E.    **The Allegations of Error**

The claimant contends that the ALJ erred (1) in failing to assign congestive heart failure as a severe impairment; (2) in evaluating his residual functional capacity; (3) in evaluating his credibility.

F.    **Is the Claimant's Congestive Heart Failure a Severe Impairment?**

To evaluate whether a claimant's medical condition qualifies as a "severe impairment," the Commissioner has issued regulations that define a "severe impairment" as one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."[50] The Fifth Circuit, however, has held that a literal application of that definition is inconsistent with the statutory language and legislative history of the Social Security Act.[51] Therefore, in *Stone v. Heckler*, the Fifth Circuit established the following standard for determining whether a claimant's impairment is severe:   an impairment is not severe only when it is a "slight abnormality" having "such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education[,] or work experience."[52]

---

[50]    20 C.F.R. §§ 404.1520(c), 416.920(c), 404.1521 ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.").

[51]    *Stone v. Heckler*, 752 F.2d 1099, 1104–05 (5th Cir. 1985).

[52]    *Stone v. Heckler*, 752 F.2d at 1101.

The claimant argued that the ALJ erred in failing to find that his congestive heart satisfied the severity standard articulated in *Stone.* Perhaps the ALJ failed to consider whether this condition was severe because it was not diagnosed until February 2016, a year after the claimant's alleged disability onset date, and the claimant did not allege in his applications for benefits that he was disabled because of that condition. It is unclear from the record whether the claimant's congestive heart failure is related to his cardiac arrhythmia, and it is unclear what effect congestive heart failure has on a person's functional capabilities. From the record before it, this Court cannot determine whether the ALJ erred in failing to find that the claimant's congestive heart failure is severe. But this Court does find that the ALJ erred in failing to expressly consider whether the claimant's congestive heart failure is severe. While this error does not require reversal of the ALJ's decision, this Court further finds that this error arose from his failure to properly develop the record, which will be discussed below.

## G.    **Residual Functional Capacity**

The ALJ is responsible for determining a claimant's residual functional capacity.[53] In making a finding in that regard, the ALJ must consider all of the evidence in the record, evaluate the medical opinions in light of other information

---

[53]    *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).

contained in the record, and determine the plaintiff's ability despite any physical and mental limitations.[54]  The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled.[55]  Furthermore, a claimant's subjective complaints must be corroborated by objective medical evidence.[56]  In making a residual functional capacity assessment, an ALJ must consider all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  The ALJ must consider the limitations and restrictions imposed by all of an individual's impairment, even those that are not severe.[57]

The claimant contends that the ALJ failed to properly evaluate his residual functional capacity by giving little weight to the only medical opinion of record (that of the State Agency non-examining physician) and basing his conclusion that the claimant is capable of performing the full range of sedentary work on "his [the

---

[54]    *Martinez v. Chater*, 64 F.3d at 176.

[55]    *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983).

[56]    *Chambliss v. Massanari*, 269 F.3d at 522; *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989).

[57]    See 20 C.F.R. §§ 404.1545, 416.945(a)(2).

ALJ's] own unsupported opinions as to the limitations presented by the applicant's medical conditions."[58]  This Court agrees.

Dr. Jonathan Norcross, the state examiner, evaluated the claimant's residual functional capacity and opined, on July 6, 2015, that the claimant was not disabled.[59] Dr. Norcross did not examine the claimant, and Dr. Norcross did not have access to all of the documents that are now in the record.  He reviewed no evidence from UHC, no evidence that the claimant had experienced a thyroid storm, and no records concerning the claimant's diagnosis with congestive heart failure.   While the documents that he did review indicated that the claimant had atrial flutter and a racing heart beat as well as hyperthyroidism and Graves' Disease, his conclusion regarding the claimant's ability to work was reached before the claimant was diagnosed with congestive heart failure and before he underwent the thyroidectomy. Significantly, Dr. Norcross noted that there was no opinion evidence in the record concerning the claimant's functionality.   Therefore, Dr. Norcross's opinions were not based on all of the evidence that the ALJ and this Court reviewed.

The ALJ discounted Dr. Norcross's opinions, giving them little weight, on the basis that evidence presented at the hearing indicated that the claimant was more

---

[58]     Rec. Doc. 9 at 5.

[59]     Rec. Doc. 8-1 at 47-55.

limited than determined by Dr. Norcross.[60]  But the ALJ did not have any opinion evidence from any other source to back up his ruling.

The Fifth Circuit has held that, when there is no opinion evidence in the record from a medical professional regarding the claimant's ability to work and the only evidence regarding the claimant's ability to work comes from the claimant himself, the ALJ's conclusion regarding the claimant's residual functional capacity is not supported by substantial evidence.[61]  While an ALJ may choose to reject a doctor's opinions, "[s]he cannot independently decide the effects of Plaintiff's. . . impairments on [her] ability to work."[62]  Consistently, "an ALJ may not – without the opinions from medical experts – derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions [and] an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions."[63]

In this case, the record contains medical evidence establishing that the claimant had a severe thyroid condition, that he underwent surgical removal of his

---

[60]     Rec. Doc. 8-1 at 25.

[61]     *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).

[62]     *Shugart v. Astrue*, No. 3:12–CV–1705–BK, 2013 WL 991252, at *5 (N.D. Tex. Mar. 13, 2013).

[63]     *Williams v. Astrue*, 355 Fed. App'x 828, 832 n.6 (5th Cir. 2009) (citing *Ripley v. Chater*, 67 F.3d at 557).

thyroid gland, and that he is taking medication to replace the hormones that had been produced by that gland, but there is no evidence in the record, aside from the claimant's reports to his physicians and hearing testimony, concerning the effect of that medical condition on the claimant's functionality.  The record contains medical evidence establishing that the claimant has been diagnosed with congestive heart failure and heart arrhythmia, but there is no information in the record, other than the plaintiff's own subjective statements, concerning the affect that these conditions have on the claimant's functionality.  There is evidence in the record establishing that the claimant underwent two surgical procedures on his back and continues to complain of back pain.  However, there is no opinion evidence in the record from a doctor who has examined the claimant and has evaluated the impact that this condition has on the claimant's ability to perform the tasks necessary to maintain employment.

Despite the absence of any medical opinion evidence regarding the effect of the claimant's conditions on his functionality apart from those of Dr. Norcross, the Commissioner argued that the ALJ properly evaluated the claimant's residual functional capacity under *Taylor v. Astrue*.[64]  In *Taylor*, the court found that the ALJ properly interpreted the medical evidence to determine the claimant's capacity for

---

[64]     *Taylor v. Astrue*, 706 F.3d 600 (5th Cir. 2012).

work.  But the factual scenario presented in *Taylor* is very different from that of this case.  In *Taylor*, the claimant complained of chronic pain but the medical records did not corroborate his complaints.  His MRI was normal, his EEG was normal, his neurophysiological studies were unremarkable.  One of his doctors even stated that there was no anatomical reason for his pain, and another doctor similarly testified at the hearing.  Because there were no objective medical findings to corroborate the claimant's subjective complaints, there was a sound basis for the ALJ to conclude that the claimant was not disabled.  The factual scenario presented in *Taylor* is very different from that presented here.  In this case, the claimant has a documented endocrine condition that necessitated surgical intervention and two documented heart conditions in addition to having had two surgical procedures on his back.  On top of that, there is no opinion evidence from any doctor that examined the claimant describing the effect that the documented medical conditions have on the claimant's functionality.  Therefore, this is not a situation in which the ALJ can, based on the medical evidence, determine that the claimant is not disabled.  To make that determination, the Commissioner needs opinion evidence from a doctor qualified to evaluate whether the medical conditions impair the claimant's functionality.

The ALJ has a duty to fully and fairly develop the record,[65] which is triggered when the existing evidence is insufficient to make an informed disability determination.[66] "If the ALJ fails in this duty, he does not have before him sufficient facts on which to make an informed decision and consequently the decision is not supported by substantial evidence."[67] In this case, the record is lacking in evidence on which an informed decision concerning the claimant's residual functional capacity can be made. Therefore, the ALJ failed to properly develop the record by failing to obtain a function evaluation from a treating physician or a consultative evaluation by a physician capable of evaluating the claimant's functional impairments. The ALJ's failure to develop the record resulted in there being no medical opinion evidence concerning the claimant's functional abilities in the record other than those of Dr. Norcross, to which the ALJ assigned little weight. This prejudiced the claimant and mandates remand of this matter for further administrative proceedings.

---

[65]    *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995); *Kane v. Heckler*, 731 F.2d 1210, 1219 (5th Cir. 1984).

[66]    *Oderbert v. Barnhart*, 413 F.Supp.2d 800, 805 (E.D. Tex. 2006).

[67]    *James v. Bowen*, 793 F.2d 702, 704 (5th Cir. 1986) (citing *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984)).

**H.**    __Did the ALJ Properly Evaluate the Claimant's Credibility__?

The ALJ called the claimant's credibility into question by stating in his ruling that "there is no indication that the claimant has sought or received any treatment since December 2016."[68]  The hearing was held on January 25, 2017 and the ruling was issued on March 2, 2017.  Therefore, the ALJ's statement pointing out the claimant's lack of treatment after December 2016 was meaningless and does not necessitate reversal of the Commissioner's decision.

## Conclusion and Recommendation

Because the ALJ's finding regarding the claimant's residual functional capacity is not support by substantial evidence, this Court recommends that the Commissioner's decision be REVERSED and REMANDED to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) with instructions to obtain one or more reports regarding the impact of the claimant's conditions upon his ability to work, either from treating physicians or from consultative physicians, before again evaluating the severity of the claimant's conditions and his residual functional capacity.  Inasmuch as the reversal and remand recommended herein falls under

---

[68]    Rec. Doc. 8-1 at 25.

sentence four of Section 405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA).[69]

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[70]

Signed in Lafayette, Louisiana, this 22nd day of January 2019.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

---

[69]     See, *Richard v. Sullivan*, 955 F.2d 354 (5th Cir. 1992), and *Shalala v. Schaefer*, 509 U.S. 292 (1993).

[70]     See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1).